

09/07/2017

Ivan Washington
543 N Central Ave Apt D
Chicago, IL 60644-1678

Re: ███████

Dear Ivan Washington,

Congratulations on your new vehicle purchase. You may have noticed that the Annual Percentage Rate ("APR") and monthly payment we mentioned in the welcome letter is lower than the APR that you signed for at the dealer. This is because Capital One Auto Finance has determined that you are eligible for a lower APR on your auto financing. As mentioned in the welcome letter, your new APR is 15.35% and the resultant monthly payment is $382.12. Please be aware that your next statement may reflect a one-time lower monthly payment if payments were already applied to your account at the higher APR. All other terms of your contract remain the same. We have provided the relevant corrected information below.

Thank you for your business. If you have any questions concerning your account, you may call one of our service representatives toll free at ███████.

Sincerely,

Capital One Auto Finance

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of your credit provided to you on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $1168.92 |
|---|---|---|---|---|
| 15.35% | $9,716.34 | $17796 | $27512.64 | $28,681.56 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 72 | $382.12 | Monthly, Beginning: 10/17/2017 |

Exhibit A

# CarMax

## Consumer Credit Sale

**RETAIL INSTALLMENT CONTRACT**

Contract Number ▮▮▮▮▮▮▮▮
Contract Date Sep 02, 2017

In this Contract, the words "you" and "your" mean the Buyer and Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

| | | |
|---|---|---|
| Seller CARMAX - OAK LAWN | 6540 WEST 95TH STREET, OAK LAWN, IL | 60453 |
| Name | Address | Zip Code |
| Buyer IVAN L WASHINGTON | 543 CENTRAL AVE, CHICAGO, IL | 60644-1522 |
| Name | Address | Zip Code |
| Co-Buyer | | |
| Name | Address | Zip Code |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $ 1,168.92 |
|---|---|---|---|---|
| 16.28 % | $ 10,385.52 e* | $ 17,796.00 | $ 28,181.52 e* | $ 29,350.44 e* |

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $ 391.41 | Monthly, beginning Oct 17, 2017 |

*e means an estimate

**Security.** You are giving a security interest in the motor vehicle being purchased.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge that is 5% of the unpaid installment for an installment exceeding $200 or $10 for an installment of $200 or less.

**Prepayment.** If you pay off the full amount owed under this Contract early, you will not have to pay a penalty.

**Additional Information.** See the remainder of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled due date, prepayment refunds, and security interests.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item D.1. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term __72__ (in months)
I want the optional GAP contract.
Buyer Signs: _[signature]_

You agree to buy and we agree to sell you the following Vehicle:
Year/Make/Model 2015/NISSAN/ALTIMA
VIN 1N4AL3APXFC470641
New _____ Used __X__

The primary purpose and use for which you are purchasing the Vehicle is:
Personal, Family, or Household __X__
Business or Commercial _____ Agricultural _____

As part of this transaction, you sold the following vehicle(s) to Seller as a "Trade-In":
Year/Make/Model N/A
VIN N/A
Year/Make/Model N/A
VIN N/A

**DOCUMENTARY FEE.** A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2008, WAS $150. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $150 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

### ITEMIZATION OF AMOUNT FINANCED

| A. CASH PRICE | | |
|---|---|---|
| 1. Cash Price of Vehicle | $ | 14,998.00 |
| 2. Cash Price of CarMax Accessories | $ | 0.00 |
| 3. Documentary Fee | $ | 169.00 |
| 4. Sales / Excise Tax | $ | 1,442.92 |
| 5. **Optional ERT Fee*** | $ | 25.00 |
| 6. Other: N/A | $ | 0.00 |
| 7. **Total Cash Price** [1 through 6] | $ | 16,634.92 |
| **B. DOWNPAYMENT** | | |
| 1. Cash Downpayment | $ | 1,168.92 |
| 2. Manufacturer's Rebate | $ | 0.00 |
| 3. Credit From "Trade-In" Sold to CarMax | | |
|   a. Value of "Trade-In" | $ | 0.00 |
|   b. Proceeds from "Trade-In" Retained by Buyer | $ | 0.00 |
|   c. Pay-Off of "Trade-In" | $ | 0.00 |
|   d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.4. below] | $ | 0.00 |
| 4. Other: N/A | $ | 0.00 |
| 5. **Total Downpayment** [1 through 4] | $ | 1,168.92 |
| **C. UNPAID BALANCE OF CASH PRICE** [A minus B] | $ | 15,466.00 |
| **D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** | | |
| 1. Optional GAP Waiver Agreement | $ | 735.00 |
| 2. To Public Officials | | |
|   a. IL Title Fee | $ | 95.00 |
|   b. N/A | $ | 0.00 |
|   c. IL Plate Fee | $ | 101.00 |
|   d. N/A | $ | 0.00 |
|   e. N/A | $ | 0.00 |
|   f. N/A | $ | 0.00 |
| 3. To CNA National Warranty Corporation * for Optional Extended Service Contract | $ | 1,399.00 |
| 4. To N/A for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | $ | 0.00 |
| 5. **Total of Other Charges and Amounts Paid to Others on Your Behalf** [1 through 4] | $ | 2,330.00 |
| **E. AMOUNT FINANCED** [C plus D] | $ | 17,796.00 |

*Seller may retain a portion of this amount.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 1. By initialing below you represent that you have read and agree to all provisions on all pages.
Buyer's Initials _ILW_    Co-Buyer's Initials _____

Business Order # ▮▮▮▮
Revision Date 1/14

carmax.com

MIS ID ▮▮▮▮
Legal - GF

Exhibit A

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

**Your Promise to Pay.** You agree to pay us the Amount Financed and Finance Charge provided for on Page 1 of this Contract according to the Payment Schedule, also shown on Page 1 of this Contract. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate shown on page 1 of this Contract on the unpaid part *of the Amount Financed. The Finance Charge, Total of Payments,* and Total Sale Price shown on Page 1 of this Contract are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

*Your Representations. You* promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Late Charge.** You will pay a late charge as described in the Late Charge section on Page 1 of this Contract.

**Returned Check Charge.** If you make a payment to us by check or other draft that is not honored by your financial institution because of insufficient funds or credit, or the lack of an account, you will pay a charge that is the greater of $25 or all costs and expenses, including reasonable attorney's fees, incurred in connection with collecting the dishonored payment.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** Unless you provide us with evidence of the insurance coverage required by your Contract with us, we may purchase insurance at your expense to protect our interests in your Vehicle. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Vehicle. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our Contract. If we purchase insurance for the Vehicle, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Security Interest.** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract, you agree that we may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges and reduce amounts you owe. If you cancel an optional contract, you authorize us to receive any refund for unearned charges and apply it to what you owe under this Contract.

**"Trade-In" and Downpayment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you. If you default we may require that you pay all you owe on this Contract at once. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**Collection Costs.** If we refer this Contract for collection or enforcement to an attorney, you agree to pay the reasonable attorney's fees, plus court costs, that we incur.

**Application of Payments and Partial Prepayments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.

**Applicable Law.** Federal law and the law of the State of Illinois apply to this Contract. If any provision is not valid, all others stay valid to the extent allowed by applicable law.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 2. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _JW_ Co-Buyer's Initials _____

Exhibit A

**RETAIL INSTALLMENT CONTRACT**
Other Important Agreements

**ARBITRATION PROVISION**

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 3. By initialing below you represent that you have read and agree to all provisions on all pages.**

Buyer's Initials _JW_                         Co-Buyer's Initials _____

Exhibit A

**RETAIL INSTALLMENT CONTRACT**
Other Important Agreements

| **NO LIABILITY INSURANCE INCLUDED** |
|---|
| LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT. |

**PROPERTY INSURANCE:** YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE VEHICLE, ENDORSED TO PROTECT US AS LOSS-PAYEE. YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT OR INSURANCE COMPANY YOU CHOOSE REASONABLY ACCEPTABLE TO US.

YOUR INSURANCE INFORMATION

LIENHOLDER/LOSS-PAYEE  CAPITAL ONE AUTO FINANCE          INSURED'S NAME  IVAN L WASHINGTON

PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ 500.00          COLLISION $ 500.00

INSURANCE COMPANY   AMERICAN ALLIANCE CASUALTY COMPANY

POLICY NUMBER ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  EFFECTIVE DATE 08/18/2017    EXPIRATION DATE 08/18/2018

INSURANCE AGENT NAME   CUSTOMER SERVICE          TELEPHONE NUMBER (847) 916-3200

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Insurance Requirements section on Page 2 of this Contract.

**USED CAR BUYERS GUIDE.** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

The following notice applies only to purchases primarily for personal, family, or household purposes.

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**VEHICLE RETURN POLICY**

You may return the Vehicle to CarMax for a refund within 5 calendar days if the condition of the Vehicle does not change. This policy only applies to used vehicles.

**ENTIRE AGREEMENT**

This Contract contains the entire agreement between you and us relating to this Contract. If the law allows, we may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

NOTICE TO CARMAX AUTO FINANCE CUSTOMERS ONLY. The retail buyer hereunder has been informed by the retail seller that his Contract will be sold and assigned by the retail seller to, CarMax Business Services, LLC d/b/a CarMax Auto Finance (a licensed Sales Finance Agency) and that the said Sales Finance Agency has a substantial interest in the business of the retail seller and that pursuant to law the retail buyer may assert all defenses equally against the retail seller and said CarMax Auto Finance, Sales Finance Agency.

**Notice to the Buyer.**

1. Do not sign this Contract before you read it or if it contains any blank spaces.
2. *You are entitled to an exact copy of the Contract you sign.*
3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 4. By signing below you represent that you have read and agree to all provisions on all pages, including the Arbitration Provision on Page 3 of this Contract. You are also confirming that you have received a completely filled-in copy of this Contract and any optional GAP Waiver Agreement, each of which has been signed by the Seller.

RETAIL INSTALLMENT CONTRACT

Seller   **CarMax Auto Superstores, Inc.**          Buyer's Signature  _/s/_

By _/s/_                                    Co-Buyer's Signature**

**A Co-Buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the Vehicle or (2) is a parent or spouse of the Buyer, or (3) will be listed as an owner on the Vehicle's title. By signing above, the Co-Buyer confirms that the Co-Buyer will actually receive possession of the Vehicle or will use it, or that the Co-Buyer is a parent or spouse of the Buyer, or will be listed as an owner on the Vehicle's title.

**ASSIGNMENT**

Seller hereby sells, assigns and transfers to  CAPITAL ONE AUTO FINANCE                    (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor  _/s/_

Date  Sep 02, 2017      Title  BOA

Exhibit A

# STATE OF ILLINOIS
## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1N4AL3APXFC470641 | 2015 | NISSAN | ALTIMA | 4 DOOR | 17257698840 |

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ FT | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 09/14/17 | 28560 | | | 09/02/17 USED | ORIGINAL |

LEGEND(S)

ACTUAL MILEAGE

**MAILING ADDRESS**

CAPITAL ONE AUTO FINANCE
PO BOX 660068
SACRAMENTO CA 95866-0068

**OWNER(S) NAME AND ADDRESS**
IVAN L WASHINGTON
543 CENTRAL AVE
CHICAGO IL 60644

**FIRST LIENHOLDER NAME AND ADDRESS**
CAPITAL ONE AUTO FINANCE
PO BOX 660068
SACRAMENTO CA 95866-0068

**SECOND LIENHOLDER NAME AND ADDRESS**

**RELEASE OF LIEN**
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged

By _____ Signature of Authorized Agent _____ Date _____
Firm Name
By _____ Signature of Authorized Agent _____ Date _____
Firm Name

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State
Secured Party    Address:

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment

**ASSIGNMENT OF TITLE**
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application"

NO TENTHS
ODOMETER READING
Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____
I am aware of the above odometer certification made by seller
DATE OF SALE _____
Signature(s) of Buyer(s) _____ Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

*Jesse White*
JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

---

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
**NOTICE OF SALE**

SEE INSTRUCTIONS ON REVERSE

| NISSAN | 2015 | 1N4AL3APXFC470641 | |
|---|---|---|---|
| Vehicle Make | Vehicle Year | Vehicle Identification Number (VIN) | Date |

Name of Seller (Current Registered Owner) _____ Name of Buyer _____

Complete Address of Seller _____ Complete Address of Buyer _____

City _____ State _____ ZIP _____ City _____ State _____ ZIP _____

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States

Seller's Signature _____ Printed Name of Seller _____ Date _____

Exhibit B

# N.A.D.A. Official Used Car Guide
# Vehicle Valuation
Print Date: August 19, 2019

Customer:   Washington, Ivan
File No.:   COAF-1217499

Vehicle Description:   2015 NISSAN Altima Sedan 4D S I4
VIN:                   1N4AL3APXFC470641

## Base Values

Retail: $  11075.00          Wholesale/Trade-in: $  8900.00

## Optional Equipment/Adjustments

Estimated Miles   62500      $   0.00

## Total Adjusted N.A.D.A. Used Car Guide Values

Retail: $  11075.00          Retail/Wholesale Average: $  9987.50

Reference  08/2019 Central

Exhibit C



## Transaction History Report (as of 8/20/2019)

| Account #: | | Period: | 02/20/2000 - 08/20/2019 |
|---|---|---|---|
| Loan Bal: | $15,271.95 | | |

| Date | Description | Debit | Credit |
|---|---|---|---|
| 08/19/2019 | Capital One auto loan payment. | | $25.00 |
| 07/19/2019 | Capital One auto loan payment. | | $25.00 |
| 06/21/2019 | Capital One auto loan payment. | | $25.00 |
| 05/24/2019 | Capital One auto loan payment. | | $300.00 |
| 05/17/2019 | Capital One auto loan payment. | | $25.00 |
| 04/25/2019 | Capital One auto loan payment. | | $400.00 |
| 04/22/2019 | Capital One auto loan payment. | | $25.00 |
| 03/18/2019 | Capital One auto loan payment. | | $25.00 |
| 03/14/2019 | Capital One auto loan payment. | | $400.00 |
| 02/15/2019 | Capital One auto loan payment. | | $25.00 |
| 01/31/2019 | Capital One auto loan payment. | | $400.00 |
| 01/23/2019 | Capital One auto loan payment. | | $25.00 |
| 12/20/2018 | Capital One auto loan payment. | | $300.00 |
| 10/25/2018 | Capital One auto loan payment. | | $400.00 |
| 10/23/2018 | Capital One auto loan payment. | | $3.24 |
| 10/18/2018 | Capital One auto loan payment. | | $175.00 |
| 09/27/2018 | Capital One auto loan payment. | | $385.00 |
| 09/13/2018 | Capital One auto loan payment. | | $191.00 |
| 08/27/2018 | Late Charge assessment | $19.10 | |
| 07/24/2018 | Capital One auto loan payment. | | $382.12 |
| 06/21/2018 | Capital One auto loan payment. | | $191.12 |
| 06/08/2018 | Capital One auto loan payment. | | $191.00 |
| 05/24/2018 | Capital One auto loan payment. | | $382.12 |
| 04/12/2018 | Capital One auto loan payment. | | $382.12 |
| 03/15/2018 | Capital One auto loan payment. | | $382.12 |
| 02/17/2018 | Capital One auto loan payment. | | $382.12 |
| 01/18/2018 | Capital One auto loan payment. | | $382.12 |
| 12/07/2017 | Capital One auto loan payment. | | $382.12 |
| 11/17/2017 | Capital One auto loan payment. | | $382.12 |
| 11/13/2017 | Payment reversal (applied toward interest, payment, or fees) | $2.88 | |
| 11/13/2017 | Capital One auto loan payment reversal | $382.12 | |
| 11/13/2017 | Payment (applied toward interest, payment, or fees) | | $2.88 |
| 11/13/2017 | Capital One auto loan payment. | | $382.12 |

*Page 1 of 2*

Exhibit D

**Transaction History Report (as of 8/20/2019 )**

| Account #: | | Period: | 02/20/2000 - 08/20/2019 |
|---|---|---|---|
| Loan Bal: | $15,271.95 | | |

| Date | Description | Debit | Credit |
|---|---|---|---|
| 10/12/2017 | Capital One auto loan payment. | | $230.12 |
| 10/04/2017 | Capital One auto loan payment. | | $152.00 |

*Page 2 of 2*

Exhibit D